MURRAY VANDIVER, State Treasurer of the State
of Maryland and the United States of Amer-
ica, *vs.* EDWIN W. POE, STEUART S.
JANNEY AND ERNEST J.
CLARK, Receivers.

*Surety Companies: deposits with State Treasurer; specific trust
for policy holders; voluntary dissolution.*

Under Article 23, section 110 of the Code (1912), certain funds
are required to be deposited, by each Surety Company doing
business in Maryland, with the State Treasurer, to be held
by him in trust as security for all the holders of the com-
pany's policies; such a company, while solvent, went into
voluntary dissolution; the receivers filed a petition to require
the State Treasurer to deliver to them. the securities that
had been so deposited with him by the corporation; upon
appeal by the Treasurer from an order of the Court directing
him to deliver the securities, it was *held,* that, under the law
and the facts of the case, there was no warrant for the Treas-
urer to deliver the securities which had been so placed in his
hands for specific trust purposes.                    p. 357

*Decided January 14th, 1913.*

Appeal from the Circuit Court of Baltimore City (Heuis-
ler, J.).

The facts are stated in the opinion of the Court.


The cause was argued before BOYD, C. J., PEARCE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.


*Edward Duffy* and *John Philip Hill* (with whom was *Edgar Allan Poe* on the brief), for the appellant.


*Steuart S. Janney* and *George R. Gaither,* for the appellees.


*Washington Bowie, Jr.,* filed a brief on behalf of various policyholders.


STOCKBRIDGE, J., delivered the opinion of the Court.

On the 13th January, 1911, the United Surety Company was placed in the hands of receivers. The bill filed in the case was by some of the stockholders and directors of the company, and among other things alleged that through mismanagement and wastefulness in the conduct of its affairs, the surplus of $250,000 had been altogether wiped out, and its capital stock had been impaired, but nevertheless the said company was solvent, but had been prohibited by an order of the State Insurance Commissioner from writing any further bonds of any nature or description until the impairment of its capital stock had been made good. The prayer of the bill was, first, that receivers might be appointed; second, for an injunction requiring the officers, agents and employees of the company to deliver to receivers the books, papers and accounts, and all the property of the company, and to refrain from interfering in any manner with the possession of the property by the receivers; and, third, that a day should be fixed before which all claims of every description should be filed in Court, or be forever barred from participation in the assets

of the corporation. The allegations of the bill were admitted by the company by its answer.

In May, 1906, the company had deposited with the Treasurer of Maryland, $100,000, of the registered stock of the City of Baltimore, par value, in order to comply with the provisions of the Act of 1896, Chapter 160. (Code 1912, Art. 23, sec. 110.) At the same time it had deposited with the Treasurer of the State of Maryland an additional $100,-000.00 par value, of the registered stock of the City of Baltimore, in order to meet the legal requirements imposed by the laws of some of the other States in which the company wished to do business. On the 27th July, 1911, the receivers filed a petition, the object of which was to require the State Treasurer to deliver over to them the $200,000 par value, of Baltimore City stock, and by its order of July 28th, 1911, the Circuit Court of Baltimore City ordered such transfer from the State Treasurer to the receivers. Thereafter, and before the decree had become enrolled, the State Treasurer filed a petition to re-open the order of July 28th, in order that he and his bond might be heard thereon, and present objections thereto. These objections came on to be heard later, and after such hearing, on March 16th, 1912, the Court re-affirmed its order of July 28th, 1911, and directed the securities in the hands of the State Treasurer to be by him delivered over to the receivers of the company, and it is from these two orders or decrees that the present appeal has been taken.

The question presented is a narrow one, and one for which no precise precedent has been cited or found. While there are a number of cases in which receivers of insolvent corporations, or corporations which have been dissolved, or the charters of which have been declared forfeited, have sought to recover from an official depositary securities placed in his hands for the security of those doing business with the company, in order that the proceeds of such securities might be distributed among claimants according to their respective legal rights, no case has been found of a like application to

gain possession of the securities of a solvent company. The solvency of the company in question is not merely alleged in the bill, but has been re-iterated time and again by these receivers in various papers filed by them, and was distinctly testified to on the stand by one of the receivers, and it is alleged to have been the reason for the dismissal of an action instituted by certain of the stockholders of the company for the dissolution of the company. One of the receivers testifies in these words: "We are endeavoring to work out a practical liquidation that will result in a benefit to those who own the property, that is. those who own its bonds, policies and stock."

In the case of the *American Casualty Co. case,* 82 Md. 535, $200,000 had been deposited in a similar manner with the State Treasurer, and an application was made by receivers of that company to turn over to them such securities, but in that case no question appears to have been raised as to the power or propriety of Mr. Jones, then State Treasurer, surrendering the property. At the time when the deposit was made in the *American Casualty case,* the statute, Act 1892, Chapter 109, then in force, did not require a deposit with the State Treasurer of any securities by a company doing a surety business. In the able opinion filed in that case the late CHIEF JUDGE McSHERRY held, that the circumstances under which the deposit was made were such as to create a valid trust and to be administered as a trust, and further that if the State Treasurer "did not care to take upon himself the responsibility of distributing the fund among the parties entitled to it, he had the undoubted right either to invoke the aid of a Court in its distribution, or upon petition of the receivers to surrender it to the Court whose officers the receivers were," and that the fund then in Court "must be treated as impressed with a trust and must be applied solely to the claims of policy holders," subject to prior or paramount liens. By the Act of 1896, Chapter 160, companies doing a surety business were brought within the control of the law, and the securities of such companies so

deposited with the State Treasurer, were required to be "reg-istered in the name of said treasurer, officially, as held in trust under and pursuant to this section, and the same shall be held by' said treasurer,' in trust for all the holders of policies or guarantees of said corporation. * * * And all of the said stocks so held in trust by the said treasurer * * * shall be held by said treasurer subject to sale and transfer and to the application of the proceeds of such sale by the said treasurer only on the order of any Court of competent juris-diction." This presents the case of a fund distinctly re-quired by a Legislative Act of Assembly as a condition of doing business, designated as a trust fund for a specific pur-pose with a trustee created by the Act, and the mode of the execution of his trust in some measure pointed out. The question is thus not identical with the situation which was presented in the *Casualty case.* There the insolvency of the company was established—here solvency is said to exist; there no statute had been provided covering the case—here we have an explicit one. In 1 *Beach on the Law of Insur-ance,* sec. 82, it is said: "The effect of statutes of the States providing for the deposit by insurance companies of securi-ties with some State official for the protection of its policy holders, and the act of the company in complying with such statute is to create a trust fund in the hands of such official, he thereby becoming trustee for the class of beneficiaries represented by the insured in those States. Such trust have been held as perfect as those created by deed or will and as much entitled to protection from the Courts. In a case where a life insurance company had deposited with a State Treasurer an amount in securities under a statute passed to enable it to thus comply with the requirements of statutes of other States, that it might do business in those States, had become insolvent, and its affairs and assets had been placed in the hands of receivers, it was held that the receivers could not by action recover this amount from the State Treasurer. It was a trust fund in his hands for the benefit of the various policy holders. The State had made him a trustee, placed no

limitation upon his rights and powers as such, and presumably intended to have him subject to the general law of trusts. When the trust terminates it is his duty to distribute the fund among the beneficiaries." The rule is thus expressed in *IV Joyce on Insurance,* sec. 3593: "In many States insurance companies are required to deposit a fund with the State Treasurer or other State officer for the security of the policy holders in such States. In case of a deposit being made in pursuance of such a requirement the receiver of the company can not obtain possession of the fund for the benefit of general creditors, but it must be divided among the persons for whose protection it was deposited, and no other can acquire the benefits thereof."

The leading case on this subject is *Cooke et al., Receivers,* v. *Warner, Treasurer,* 56 Conn. 234. In that case the Insurance Commissioner of Connecticut had taken proceedings against the Continental Life Insurance Company upon the ground that its assets were less than its liabilities, and asked the appointment of a receiver, and that the charter be annulled; and a decree was passed by which the charter was annulled (corporation dissolved) and receivers were appointed, and the receivers then demanded of the State Treasurer the securities which had been deposited with him, under a statute substantially like that in this State. The application of the receivers was refused, the Court holding that the trustee could not thus have the trust funds taken from him for use or even distribution by others, in the absence of an allegation that he was wrong either in possession or administration, that the statute could no more compel a trustee to surrender property lawfully subjected to a trust than it could compel a mortgagee or pledgee to release the mortgage or pledge without payment; that if turned over to the receivers it might be diverted from the specific trust purposes to which it was dedicated. The New York Court of Appeals, in the case of *Ruggles* v. *Chapman,* 59 N. Y. 163, adopted the same rule, and an Act was then passed by the New York Legislature in which it was thought

that the rule had been modified, and in that way in the case of the *People* v. *Chapman,* 64 N. Y. 557, the question a second time reached that Court, and its former ruling was affirmed.    These cases were followed in the later case *in re Guardian Insurance Co.,* 13 Hun. 115, although the judge deciding that case would evidently have been very glad if he could thus have diverted the fund from the hands of the trustee into those of the receivers.    In the case of *in re Home Provident Safety Fund Association,* 129 N. Y. 288, there was a voluntary dissolution of the company; and it was held, that while the Court had power to make a distribution of its funds amongst those entitled, it had no power to take from a trustee funds placed in the hands of that trustee for a specific purpose and distribute them through its receiver instead of through the trustee; that the trustee was entitled to hold the fund notwithstanding the dissolution; but the courts might require the trustee to make the distribution of the funds in accordance with the terms of the trust on which it was held.    The case of the *People* v. *The Am. Steam Boiler Works and Ward, Receiver,* 147 N. Y. 25, was one which turned mainly upon the right of the receiver to demand of the trustees the interest which had been received on the deposit, and that right was affirmed; but it was further held that under the then existing statute of New York, which had been passed in part to obviate the effect of the decision in *Ruggles* v. *Chapman, supra,* that a receiver was not entitled to have the fund turned over to him until the right of the policyholders had been settled.    The appellee relies strongly for the purpose of sustaining the right of the receivers to the securities now in the hands of the State Treasurer, upon the case of *Hayne* v. *Met. Trust Co.,* 67 Minn. 245; in that case certain securities had been deposited with the State Insurance Commissioner, for the benefit of policyholders, and subsequently an exchange was effected by the company by which securities of a less value were substituted for the securities originally deposited, and the receiver proceeded

against the trust company which then held the original securities to recover them for the benefit of the policy-holders. This presented a far different case from the one before us; there had been a diversion of the trust fund, and it was a proceeding, not against the official who should have been the custodian of the security, but against a corporation which had gained possession of those securities, to recover them back, or in other words to restore a fund which had been permitted by the State official whose duty it was to guard it, to be diverted, and under such a condition of facts there is no similarity to the present case. The appellee has also cited the case of *Relfe* v. *Spear,* 6 Mo. App. 129; that was the case of a proceeding by the Superintendent of Insurance of the State of Missouri against the receivers of five different insurance companies, and the purpose of the application was to enable the Superintendent to distribute the proceeds of the securities. In that case the phraseology of the Missouri Statute differed from that of New York; the companies had been dissolved, and under the wording of the statute it was held that the distribution should be made under the supervision of the Court through its receivers.

The case of the *Attorney General* v. *North Am. Life Ins. Co.,* 80 N. Y. 152, arose under an entirely different statute, one which provided for the sale and conversion into money by the Superintendent of Insurance of the securities deposited with him, and then contained this further provision: "The proceeds of such sale or sales shall be paid to the said receiver on his giving his receipt to said superintendent." This was an express direction of law, not for the turning over to the receiver of the securities held by the State Insurance Commissioner, but of the proceeds of sale, and under such a mandate the Court had no option when the Insurance Commissioner had made the sale required by the statute, but was bound to direct the turning over of the proceeds. This decision, therefore, can not be regarded as a precedent to the present case.

In *Falkenbach* v. *Patterson,* 43 Ohio St. 369, the Court goes only to the extent of saying that "the Superintendent of Insurance should act and perform his trust, and when the trust is fully performed, the remainder of the deposit, if any, should then and not until then be paid over to the assignee."

An Ohio Statute read, "The securities deposited with the Insurance Department pursuant to this section, shall be held by the Superintendent in trust for the benefit of, and as security for, the policyholders of such corporation, their legal representatives and beneficiaries," and in the *State* v. *Matthews,* 64 Ohio St. 419, where a recovery of the securities was sought by the assignee of an insolvent corporation, it was held, that the assignee could not recover them without first showing that the company was no longer liable to the policyholders, and that it was the duty of the Superintendent of Insurance to make the distribution among such policyholders. In all of these various cases the corporations, the recovery of the securities of which were asked, were insolvent, and as set forth as above, there is hardly a break in the line of decisions to the effect that receivers and assignees are not entitled to demand or obtain the possession of such securities, and if this be true with regard to insolvent corporations, with far greater reason must it be true in the case of a solvent corporation.

Much stress was laid in argument upon the complication and increased expense which would ensue from a distribution of the fund arising from the proceeds of sale of the securities in the hands of the State Treasurer, if that were required to be done in a separate and independent proceeding. Upon the case as presented in the record there is no case of distribution before this Court, or even evidence that this fund, or any of it, will be required by the receivers for the liquidation of valid claims. From their report they apparently hold assets of the corporation to an amount somewhere between four and five hundred thousand dollars not impressed with any trust, and if the company is, as they aver

and testify, solvent, it may well be that no part of the $200,-000 will be required for the payment of any claims of policy holders. Apparently some such belief was in the mind of the Court below, as it passed no decree dissolving the corporation, but in fact dismissed a bill having that ultimate object in view.

The State Treasurer is now a party to the present proceeding; by his answer the disposition of the securities or the proceeds arising from them is under the control of the Equity Court in which these receivers were appointed, and while we do not decide that under a different condition of facts it might not be right and appropriate to direct the turning over of the proceeds of the sale of the securities to the receivers to distribute, or that the State Treasurer might not make a distribution of them in the same proceeding, we can find no sufficient warrant in the statute, or in the condition of the company as it now exists, to justify the turning over at this time to the receivers of a solvent corporation, securities which have been placed in the hands of a trustee for a specific trust purpose, and with beneficiaries scattered in a large number of States.

The decree of July 28th, 1911, and March 16th, 1912, must therefore be reversed.

> *Decrees of July 28th, 1911, and March 16th, 1912, reversed, and cause remanded; the appellees to pay the costs of this appeal.*