EDWIN W. POE, et 'al., Receivers,

*vs.*

MUNICH RE-INSURANCE CO.

*Surety companies: reinsurance agreements; accounting upon
dissolution.   Pleading in Equity: facts subsequent
to bill; supplemental bill.*

In general, nothing which has occurred since the filing of a
bill can be added to it by amendment, but must be brought in
by supplemental bill.                                    p. 531

The doctrine that equity will retain jurisdiction to settle the
entire controversy is confined to the determination of rights
dependent upon or germane to the subject-matters and main
purposes of the bill.   Jurisdiction will not be retained to adjust
independent controversies between the parties, or controversies
beyond the scope of that raised by the bill.        pp. 532-533

An agreement between a surety company and a reinsurance
company, as to the auditing of their accounts upon notice of
dissolution, *construed.*                            pp. 521-534

*Decided June 24th, 1915.*

Appeal from the Circuit Court of Baltimore City. (Bond,
J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner and Stockbridge, JJ.

*Joseph C. France* and *Stuart S. Janney* (with whom were *Robertson Griswold* and *Albert C. Ritchie* on the brief), for the appellants.

*R. E. Lee Marshall,* for the appellee.

Boyd, C. J., delivered the opinion of the Court.

This is an appeal from an order dismissing a petition of the receivers of the United Surety Company praying that the papers in the case be referred back to the auditor to state a final account between that company and the Munich Re-Insurance Company, under the terms of a participation contract entered into by the two companies. When the petition was filed an order to show cause was passed and the Munich Company answered, alleging that the Court was without jurisdiction in the premises, and that even if possessed of jurisdiction it should not exercise it until the United Company shall have rendered to the Munich Company the account called for by the contract between the two companies, and until some dispute or difference in respect to such account shall first have arisen.

Controversies between the two companies in reference to that contract were before this Court in 113 Md. 200, and 121 Md. 479. The first was an appeal from a decree which dismissed a bill of complaint of the Munich Company against the United Company, decreed that the defendant was entitled to cross-relief as prayed in its answer, and referred the cause to the auditor to ascertain and report the amount, if any, due by the plaintiff to the defendant under the participation contract. That decree was affirmed and the cause was remanded for further proceedings. The bill alleged that by reason of what was stated in it that contract was fraudulent

and void, but that the defendant had instituted an action against it in the Superior Court of Baltimore City to recover $53,968.55 alleged and claimed to be due it under said contract. It prayed that a decree be passed declaring the participation contract null and void, and cancelling the same, that the defendant "be enjoined from prosecuting any suit against your orator based upon said contract, and from asserting in any county any claims or pretensions by reason of said contract"; that an injunction issue restraining the defendant from prosecuting the said suit in the Superior Court, and for general relief. The defendant answered, alleging that in so far as the bill sought to enjoin the suit against the Munich Co., it was brought with the knowledge of that company and with its acquiescence in that it had voluntarily appeared in said suit by accepting service of summons through its counsel, without which no action could have been maintained against it in this jurisdiction, "and by way of answer to the merits of said bill of complaint and for cross-relief as though the same were prayed by a cross-bill," the defendant answered at length —concluding "and for cross-relief defendant shows that, under said contract, a copy of which is filed with plaintiff's bill as 'Plaintiff's Exhibit No. 4,' plaintiff is indebted to the defendant in a large sum of money, for which this defendant prays an accounting and a decree herein in its favor." The case in this Court was decided May 6, 1910, and on November 19, 1910, the two companies entered into an agreement by which, after reciting that the Court had by its decree of the 30th of October, 1909, ordered that an accounting be had between the two companies under the terms of the contract, and "in order to facilitate said accounting the parties hereto desire to enter into this agreement," it was agreed as follows: "First, That said Munich Re-Insurance Company and the said United Surety Company do hereby constitute and appoint the American Audit Company their agent to examine the records, books and accounts of the United Surety Company, and therefrom to state an account in annual periods

beginning 2nd January, 1906, and ending on January 1st, 1911, applying to the share of the Munich Re-Insurance Company in the business of the United Surety Company as per their contract above referred to. Second, The Munich Re-Insurance Company and the United Surety Company will each delegate one of their employees to assist in such accounting, and all amounts passed by the American Audit Company, and to which no objection has been raised by either of the delegates, shall be deemed to be accepted by both parties, and the fact and amount of any item of receipt or disbursement by said Surety Company as found by said Audit Company shall likewise be conclusive upon the parties hereto, the facts and circumstance surrounding such item (unless agreed to) and the relevancy thereof to the accounting between the two said companies being alone left open for the future determination. The audit, however, shall not extend to outstanding liabilities for unexpired risks or claims not yet settled; both the outstanding liabilities for unexpired risks and claims not yet settled are reserved for future adjustment between the parties under the terms of the contract."

Other provisions were made which need not now be referred to. The Audit Company submitted a report and the parties then proceeded with the accounting before the auditor, to whom the case had been referred by the decree. An audit was filed, and on January 2nd, 1913, exceptions to it were overruled and the audit was ratified and confirmed. Appeals were taken by both parties and were disposed of by the decision in 121 Md. 479. On June 26, 1913, the decree was affirmed in part and reversed in part and the cause was remanded, to the end that the account be restated in accordance with that opinion. An audit was filed in the lower Court, which was ratified on the 26th day of September, 1913, and the amount thus ascertained to be due by the Munich Company, together with interest thereon to September 30th, 1913, being in all $77,445.79, was paid by that company to the receivers on October 2nd, 1913.

The participation contract took effect January 2nd, 1906, was to continue for a period of five years from that date, and was to be tacitly renewed for further periods of five years thereafter, unless written notice was given by either party one year previous to the expiration of any term of five years. The Munich Company, however, had the right to withdraw "after the expiration of the first period of five years from this agreement at the end of any calendar year, by giving one (1) year's notice in writing if the transactions under this agreement result in a loss *of* the 'Munich.' The 'Munich' continuing to participate in all insurances coming within the terms of this agreement, granted or renewed by the 'United' during the currency of any notice of cancelment, and remaining liable for its share of the claims arising out of such insurances, and out of insurance in force at the time of the notice being given until expiration of the liability thereon." (Article XII of agreement.)

The bill of complaint was filed by the Munich Company on May 29, 1907, and the first decree was passed October 30, 1909, and affirmed by this Court May 6, 1910. The notice authorized by Article XII was given by the Munich, so as to terminate the agreement at the end of the year 1910, but neither when the bill was filed nor when the decree was passed were such questions as are now sought to be referred to the auditor before the Court. It will be remembered that the United had sued at law to recover what it claimed was due for the first year of the contract, and by its cross-bill it alleged that "the plaintiff is indebted to the defendant in a large sum of money, for which this defendant prays an accounting and a decree herein in its favor." There was no other prayer in the cross-bill—not even one for general relief. If the case had been determined at any time before January 1st, 1913, nearly five years and a half after the cross-bill was filed, no accounting could have been required of what is now sought to be referred to the auditor, for by the notice the contract was terminated at the end of 1910,

and by Article XIII it was agreed: "In case of notice of termination by either party, the accounts shall be made up not later than two years after the expiration of the notice," and the Munich Company would not have been in default for not accounting until that time expired. Of course, a new proceeding would then have been necessary, in order to require an accounting.

There was therefore nothing up to the time of the decree in this Court in 113 Md. which would have authorized the accounting now sought. As will be seen by reference to the agreement between the two companies entered into on the 19th of November, 1910, part of which we have quoted above, the American Audit Company was only authorized to state an account for the five annual periods beginning January 2nd, 1906, and ending January 1st, 1911, and it was expressly stated that, "The audit, however, shall not extend to outstanding liabilities for unexpired risks or claims not yet settled; both the outstanding liabilities for unexpired risks and claims not yet settled are reserved for *future adjustment between the parties,* under the terms of the contract." Therefore it can not be said that the agreement of November 19th, 1910, authorized an accounting, excepting for those five annual periods which ended on January 1st, 1911. If it be conceded, as contended by the appellants, that the "audit" referred to in what was just quoted above was the one to be made by the Audit Company, that can make no difference. By the next paragraph it was agreed that when completed said account, including a separate statement of any items of receipt or disbursement concerning the relevancy of which there were differences between the two companies, should be signed by the Audit Company "and filed in the above entitled cause, together with a copy of this agreement, *and shall form the basis of the Court accounting provided for by the decree hereinabove mentioned."* That decree was the one of October 30th, 1909, which had been affirmed by this Court. As the account of the Audit Company was to be the basis of the accounting provided for in

the decree, can it be doubted that when the agreement said the audit shall not extend to outstanding liabilities for unexpired risks or claims not yet settled, it was intended to exclude those items from the accounting in Court? No valid reason can be assigned for not permitting the Audit Company to include them, if they were to be considered by the Court auditor, but, on the contrary, as the agreement shows a desire to facilitate the accounting, there would have been every reason for having the Audit Company consider them. Moreover, as the account of the Audit Company was to form the basis of the accounting in Court, there would have been nothing for the Court auditor to act on, concerning those items, if they were omitted from the audit of the Audit Company. We can, therefore, have no doubt about it being intended by the parties that those items should be *excluded* from the accounting in Court. But even if that were not so, there is nothing in the agreement to *include* them, and giving the agreement all the force possible, it can not by any proper construction to be placed on it be said to authorize an accounting beyond the five-year period, and that being so, we are forced to look to the cross-bill (speaking of the answer of the United as such) and the decree of October 30, 1909, for such authority, if any exists.

We have quoted above the prayer for relief in the cross-bill (and bear in mind that there is no other), and the decree of October 30th, 1909, after dismissing the bill of the Munich Company, thus proceeded: "And the Court being further of opinion that the defendant is entitled to cross-relief as prayed in its answer, it is further adjudged, ordered and decreed that the case be and it is hereby referred to the auditor with directions to ascertain and report the amount, if any, *due* by the plaintiff to the defendant, under the said participation contract," etc. It did not say "due or to become due," and when passed the contract was still in force. The opinion of this Court in 113 Md., which concluded by saying: "As under our practice the answer of the defendant asking for such relief (cross-relief) may be treated as in the

nature of a cross-bill, and as in a case of this character it is desirable to dispose of the whole matter in controversy, we deem the decree proper * * * and will affirm it," was not intended to, and did not, enlarge the decree it was affirming. "The whole matter in controversy" certainly did not include the business of 1910, as that year was only about one-third expired when the opinion of this Court was delivered, and therefore that statement can not aid the appellants' contention.

Nor was the opinion of the Court, delivered by JUDGE URNER, and reported in 121 Md., intended to extend the accounting beyond what the decree of October 30th, 1909, authorized, excepting in so far as the parties had by the agreement of 1910 agreed that it should be. Stress is laid on the statement that, "The present accounting must accordingly include the annual ascertainments of profit and loss required to be made during the currency of the contract, and also the settlement for which it provides after the expiration of the notice of withdrawal." If the latter sentence be taken alone it might furnish some ground for contending that this Court intended the settlement to include the two years after 1910, but when it is read in connection with what the Court was at the time considering, as it must be, it is not only perfectly clear, but says precisely what was intended to be said, which is not what appellants claim.

In the first place, it must be observed that JUDGE URNER said: *"The present accounting* must accordingly include," etc., clearly meaning the accounting then under consideration and to be determined by that decision, and not that the case was to be kept open for future settlements. The Court only had before it for review the accounting for the five annual periods, ending January 1, 1911. The audit before the Court did not include an accounting for a period after that time, and the Court did not pass on a settlement for any such period. There were three questions disposed of by the auditor's report, which were brought before this Court by exceptions filed to the audit and ruled on by the lower

Court.   They were: (1) as to certain excise business; (2) as
to whether the premium reserves for unexpired risks and
the reserves for claims were to be included as disburse-
ments, and whether interest was chargeable on the yearly
balances; (3) whether the Munich Company was entitled
to an allowance for good-will.   After passing on the excise
business, JUDGE URNER took up the premium reserves and
the reserves for claims.   He said: "The question as to the
extent to which the premium and claim reserves should be
considered in the accounting requires a reference to the rela-
tions of the contracting companies to each other at the time
of the preparation of the audit."   He then said that by
Article VIII of the participation agreement both classes of
reserves were to be included in the annual accounts, but by
Article XIII it was provided that if notice of termination
is given the account to be stated after the expiration of that
notice should not be charged with any premium reserve.
Owing to the litigation between the parties no settlement of
any kind had been made.   The auditor's account was pre-
pared in December, 1912, nearly two years after the with-
drawal of the Munich, and after stating those facts the state-
ment above quoted as to "The present accounting," etc., fol-
lows in the opinion.   The premium reserves for unexpired
risks represented "a proportion of the annual premiums set
apart as unearned until the expiration of the year for which
they are paid in advance.   At the end of the term for which
the premiums are received the reserve is released and be-
comes available as current income."   By Article VIII both
the premium reserve for unexpired risks and reserve for
claims were to be included in the "Disbursements" in the
annual accounts, but as by Article XIII the account to be
made up not later than two years after the expiration of a
notice of termination "shall not be charged with any pre-
mium reserve," and as the account was not stated until nearly
two years after the contract was terminated, it followed
that for the last year of the contract (1910) by virtue of
Article XIII the premium reserve was not properly charge-

able. The Court therefore determined that in the accounts for 1906, 1907, 1908 and 1909 both classes of reserves were to be included, but for 1910 the premium reserve was not to be included, because that reserve was by the time the audit was stated, "released," and had become "available as current income." Then by Article XIII it was provided that in case of notice of termination the Munich was to receive as reim-bursement for good-will five per cent. of its share of the net premiums. It therefore followed that when the audit was stated in December, 1912, the premium reserve for 1910 was released and the net premiums on which the five per cent. for good-will was to be allowed were known. Consequently, when the account for the last year (1910) was stated, it was proper to have the settlement for which the contract provided, and that was done. In other words, as the parties had by their agreement of November 19, 1910, agreed that the settlement should be made for the five-year period according to the contract, and as the contract excluded the premium reserve from the last year and provided for the five per cent. for good-will being allowed the Munich, a proper accounting for that year necessarily included the settlement provided for after the expiration of the notice.

This Court declined to adopt the decree of the lower Court, which held that of $154,338.28 found to be payable by the Munich Company only $11,631,88 was a final indebtedness, and $142,706.40 was due to the United Company subject to a further accounting, which latter sum the decree provided should be paid to trustees to be held and administered under the jurisdiction of the Court. This Court said: "According to the plain terms of the agreement, the Munich Company's shares of the losses shown by the annual accounts were *debts* which it owed absolutely and which it was obligated to pay immediately. The explicit provisions on this subject would appear to preclude the theory that there should be any further accounting as to the indebtedness thus determined. It is only with reference to amounts reserved for outstanding claims in the final account that the agreement provides for a further

adjustment after the precise amounts required for the claims
have been ascertained by actual settlement." This Court
found that after excluding the premium reserve the account
for the fifth year would show a loss of $30,247.28, and said:
"One-third of this amount will be payable by the Munich
Company to the receivers of the United Company as an ascer-
tained liability, the parties remaining accountable with
respect to outstanding claims as provided by the agreement."

The appellants also contend that the last clause of the last
quotation indicates that it was the intention of this Court
that there should be a further accounting, but manifestly it
did not mean an accounting in Court. It says "accountable
with respect to outstanding claims *as provided by the agree-
ment.*" Art. XIII says: "If claims are still outstanding, the
proper reserve shall be charged, and after the final settlement
of *each of such claims,* the 'Munich' will be paid any differ-
ence in its favor, and pay any difference in favor of the
'United,'" and the agreement of November 19, 1910, pro-
vided that "both the outstanding liabilities for unexpired
risks and claims not yet settled are reserved for future adjust-
ment between the parties under the terms of the contract."
The latter agreement, which was the one which authorized
the Court to act on the whole of the five-year period, espe-
cially said that such claims not yet settled were reserved
*for future adjustment between the parties,* etc.—not in
another audit in that case. As we have seen, the liability for
unexpired risks, or what are elsewhere spoken of as premium
reserves for unexpired risks, had been settled when the audit
was stated (as the periods which the premiums covered had
expired), and hence that was no longer open, but that for out-
standing claims was not only still open but might continue
for some years. It was at least possible that some of those
claims would be unsettled for a long time, and there could
have been no reason for the Court retaining jurisdiction of
the case indefinitely for such claims, especially as there may
never be any controversy between the parties to this case as
to any of them. There was no more reason for continuing the

accounting in Court in reference to the reserve for claims than for subsequent losses on insurance taken out during the five-year period, for which the Munich is liable for its share. Such liability on a guardian's bond, for example, might continue for some years after the settlement, and surely this case is not to be kept open for an accounting in reference to those. On the contrary, JUDGE URNER said: *"The accounting in this case* does not affect the ultimate liability of the Munich Company with respect to obligations issued by the United Company and covered by the participation agreement, as to which defaults are not now, but may be hereafter, disclosed. * * * The Munich Company, however, is concededly responsible for its due proportion of all losses which may eventually develop from the insurance covered by the agreement."

It is, therefore, perfectly clear that there is nothing in that opinion indicating that it was the intention of this Court that there should be any further accounting *in this case* after the audit was stated as directed by the opinion. As no such question was before us, even if we had been under the impression that there would be such an accounting as is now sought, and we had so assumed in the opinion, we would not be at liberty to so decree unless justified by the record.

There being nothing in the decree of the Court of October 30, 1909, or in any subsequent decree of that Court or of this, or in the agreement of the parties, authorizing the accounting now asked for, there can be no doubt about the conclusion the authorities must lead us to. The general rule is that nothing which has occurred since the filing of a bill can be added to it by amendment, but must be brought in by supplemental bill. *Miller's Eq. Proc.* 236. New events occurring after the filing of a bill should be brought forward by supplemental bill, as such facts can not be introduced by amendment to the bill, *Ibid.* 246, and in a proper case a supplemental bill may be filed even after decree. *Ibid.* 248. Inasmuch, then, as notice of the withdrawal was given and the contract thereby terminated after the cross-bill was filed, and even after the decree

for accounting, it would seem to be clear that if it could have been done at all such accounting as is now sought should have been asked for by supplemental bill. There was no attempt to amend the bill, and we do not mean by what we have said simply to distinguish between a supplemental and an amended bill, but in the absence of supplemental proceedings or agreement we have no authority to require this accounting in the original case.

There can be no doubt that under the rules of equity pleading the accounting was limited to that prayed for in the cross-bill, unless by agreement or in some way properly extended beyond that. We do not understand that to be denied by the appellants, but they rely on the fact that it was not decided by this Court until May 6th, 1910, that the Munich Company was bound on the contract and was liable to an accounting, and that the agreement of November, 1910, was properly regarded as rendering unnecessary any supplemental pleading. But the difficulty about that is, as we have already seen, that the agreement of 1910 expressly limited the accounting to the five annual periods, which has been done. By no proper construction can that agreement be held to include the accounting now sought for. Nor can the appellants be aided by the well-known principle, which is thus concisely stated in 16 *Cyc.* 106: "A Court of Equity which has obtained jurisdiction of a controversy on any ground, or for any purpose, will retain such jurisdiction for the purpose of administering complete relief and doing entire justice with respect to the subject-matter." On the next page of that volume it is said: "By virtue of the rule, the Court, when its jurisdiction has been invoked for any equitable purpose, will proceed to determine any other equities existing between the parties, connected with the main subject of the suit, and grant all relief requisite to an entire adjustment of such subject, *provided it be authorized by the pleadings.*" (Italics ours.) Again, on page 116 it is said: "The doctrine of retaining jurisdiction to settle the entire controversy is

confined, however, to the determination of rights dependent
upon or at most germane to the subject-matter and main
purpose of the bill.    Jurisdiction will not be retained to
adjust independent controversies between the parties, or con-
troversies beyond the scope of that raised by the bill." Some
of our own decisions might be cited, but we do not deem it
necessary, as the above quotations from *Cyc.* properly state
the rule and its qualifications.

The petition filed by the appellants is itself suggestive of
another reason why the Court below should not have passed
the order prayed for. It was filed June 5th, 1914, over three
years after the determination of the contract and about a
year after our decision in 121 Md., and it says, "the auditor
of this Court is now engaged in the making up of an account
in which the ultimate liability of the United Surety Company
on claims covered by the participation agreement with the
Munich Re-Insurance Company shall be finally established.
That it is right and proper that the papers in this case shall
now be referred back to the auditor to state a final account
between the plaintiff and defendant therein under the terms
of said partition agreement." There is no suggestion of any
difference between the two parties on any of the items to be
settled.    The only items left open after the decision in 121
Md. are the reserve for claims and the ultimate liability of
the Munich Company with respect to obligations issued by
the United Company, which were covered by the participation
agreement, "as to which defaults are not now, but may be
hereafter disclosed," to use the language of that opinion. As
to the first, the participation agreement states what we have
quoted above.    The allowance of reserve for claims was
directed by this Court, and was charged in the audit which
was ratified December 26, 1913.    There would seem to be
but little, if any, room for controversy about such claims, and
the Court cannot assume that items still to be settled will be
disputed, regardless of any *bona fide* defense.    Then as to the
other class left open, Article XII expressly provides that the

Munich Company shall remain "liable for its share of the claims arising out of such insurances, and out of insurance in force at the time of the notice being given until the expiration of the liability thereof." It is certainly not desirable to have the receivers engage in useless litigation, or to have unnecessary costs imposed on those who are ultimately to have the benefit of the fund. So if the Court had the power to direct a further accounting, the wisdom of doing so would be questionable, under existing conditions. If it becomes neces sary other proceedings can be instituted for the purpose. It may be that there will be difficulty in serving the Munich Company, but we can not assume that a foreign corporation of this kind, which has been doing business in this country, or at least some of its assets, can not be reached here, but even if that be so, we must be governed by the established rules of equity practice as we understand them. It follows from what we have said that the order of February 8th, 1915, dismissing the petition will be affirmed.

> *Order affirmed, the costs to be paid out of*
> *the fund in the hands of the receivers.*