## POE et al. v. MUNICH REINSURANCE CO. et al.

(District Court, D. Maryland. December 27, 1921.)

1. Insurance ⏤681—Reinsurer, who terminated contract, cannot require continuation of business.

A corporation, which had agreed with a liability and surety company to assume one-third of the latter's risks for one-third of the receipts, but who had given notice under the provisions of the agreement to terminate the relationship, cannot insist that the other company shall continue in business after such termination, but can only insist that it exercise good faith to keep the losses under the business written before the termination as low as possible.

2. Insurance ⏤679—Final settlement of liability reinsurance contract held to mean determination of original liability.

In the contract for reinsurance of the liability of a surety company, containing a provision that after the final settlement of claims outstanding, when the preliminary accounting was had on termination of the agreement, the reinsurer will be paid any difference in its favor, and will pay any difference in favor of the surety company, the term "final settlement" does not mean payment, but merely means the fixing by agreement or judicial determination of the amount due by the surety company on the bonds or policies for which it was reinsured.

In Equity. Suit by Edwin W. Poe and others, as receivers of the United Surety Company, against the Munich Reinsurance Company, a corporation, and Francis P. Garvan, Alien Property Custodian. Decree rendered for an accounting.

Joseph C. France, J. Kemp Bartlett, and Stuart S. Janney, all of Baltimore, Md., for complainants.

R. E. Lee Marshall, of Baltimore, Md., for defendant Munich Reinsurance Co.

Robert R. Carman, U. S. Atty., of Baltimore, Md., for defendant Garvan.

ROSE, District Judge. The plaintiffs are the receivers of the United Surety Company, a Maryland corporation. They and it will both be referred to as the United, unless there is occasion to distinguish between them. The principal defendant is the Munich Reinsurance

Company, a corporation of Bavaria. The Alien Property Custodian, who holds its American property, does not raise any defense peculiar to himself, and may in this discussion be ignored.

The United was chartered in 1906. Within a few months after its organization, it concluded with the Munich a participation agreement, upon which this suit is brought. As early as November 1, 1906, the latter sought to rescind on the ground that its assent had been procured by fraudulent misrepresentations. The United replied with a request for an accounting, for what was due to it under the contract. It was not until 1910 that the case reached the Court of Appeals of Maryland. Munich Reinsurance Co. v. United Surety Co., 113 Md. 200, 77 Atl. 579. It was then held that the Munich, having waived its, right to rescind, must account. Before the decision was handed down, it had, as the agreement authorized, given a year's notice of its election to cancel the contract as of January 1, 1911.

The five years of the United's life were short and troubled. Its business grew, it is true, and at times appeared to be profitable; but the event showed that the unfavorable judgment of some of the shrewder of those who came into actual contact with it was abundantly justified. It had trouble with the insurance commissioners of some of the states, and its licenses to do business in two or three important commonwealths were revoked. In the closing months of 1910 it unavailingly tried to get some one to take over its business. The sands of its life were fast running out, and it looked as if there would soon be a chance for some one to earn an undertaker's fee.

In the latter part of December, 1910, a bill to put it into the hands of a receiver on the ground of insolvency was filed in a state court of equity. At that time the company was not quite sure that it was dead, and the individuals interested in its management wished to have something to say as to who should bury it when the end came. Then, on the 11th of January, 1911, the insurance commissioner of Maryland forbade it to do further business here. It was still unwilling to have its obsequies taken charge of by those whom, the month before, had seemed unduly solicitous to perform the last offices for it, so it went into another state court having equity jurisdiction. It there told the chancellor that it was solvent, but life was to it no longer worth living. It asked that its dissolution should be decreed and the claims against it liquidated. It was in this last-named proceeding that the present plaintiffs were appointed.

In much of the subsequent litigation, the court continued to assume that it was solvent, as it had alleged itself to be. Preston v. Poe, 116 Md. 1, 81 Atl. 178; Vandiver v. Poe, 119 Md. 348, 87 Atl. 410, 46 L. R. A. (N. S.) 187, Ann. Cas. 1914D, 435; U. S. v. Poe, 120 Md. 89, 87 Atl. 933. Nevertheless there does not appear to be any question that at the present time it owes more than it is or ever will be able' to pay, a result to which the litigation in which it has been engaged may perhaps have contributed. In addition to the cases already mentioned, its affairs have been before the Court of Appeals of Maryland in Poe v. Philadelphia Casualty Co., 118 Md. 347, 84 Atl. 476; Beilman v. Poe, 120 Md. 444, 88 Atl. 131; Munich Reinsurance Co. v. United

Surety Co., 121 Md. 479, 88 Atl. 271; Poe v. Munich Reinsurance Co., 126 Md. 520, 95 Atl. 164; Schlens v. Poe, 128 Md. 352, 97 Atl. 649; Barber Asphalt Co. v. Poe et al. (decided June 29, 1921) 115 Atl. 24; Schlens v. Poe, 131 Md. 182, 101 Atl. 688; and perhaps in others, which have escaped my notice.

Doubtless, however, its present plight was inherent in the nature of things. A complete stoppage of almost any enterprise entails serious losses, and this is peculiarly true of a company whose business is that of becoming a surety, not only for the fidelity of employees, but upon court, official, and contract bonds as well. It is difficult to fix any point of time subsequent to which claims against it may not arise out of obligations incurred many years before. All sorts of difficult questions come up, and undue expense, if not dissipation of assets, is an almost inevitable consequence.

There has already been an accounting between the United and the Munich in the manner directed in some of the opinions already cited. That accounting, however, could not, in the view of the Court of Appeals, do more than ascertain what was payable by the Munich to the United on January 1, 1911. In the present proceeding, the plaintiffs are seeking to recover certain sums which they think became due after that date, and the right to recover which, when due, was expressly recognized, if not decided, in some of the cases to which reference has already been made.

In substance, the bargain between the United and the Munich was that the latter should have a third share in certain classes of risks constituting the bulk of the business done by the former. It was to get one-third of the receipts, and to accept a one-third share of the amount insured or renewed under every bond, policy, or guaranty which should be issued by the United in this country, for indemnification against loss under surety, fidelity, and burglary insurance. The contract expressly declared that in each and every case the liability assumed by the Munich should be one-half of that retained by the United.

To make sure that in the end this result should be completely and exactly attained, a method of accounting was somewhat elaborately prescribed. There were to be annual accounts, and another was to be stated two years after the agreement had come to an end. In order that balances might be promptly struck, certain items were to be estimated in ways specified. Two years later there was to be another accounting, in which there were still to be some, although fewer, arbitrary assumptions. But the end was not yet, for it was recognized that there would be claims outstanding even after the expiration of two years from the termination of the agreement, and the contract expressly declared that, after the final settlement of each claim outstanding at the time of the last accounting, the Munich would be paid any difference in its favor, and would pay any difference in favor of the United.

It is not questioned that if, by the phrase "final settlement," is meant the agreed or adjudged determination of the amount due on bonds written during the existence of the contract, as distinguished from

their payment, the difference is in favor of the United, and this proceeding is brought to ascertain and recover its amount.

[1] One defense of the Munich goes to the root of the United's case. It is based upon the undoubted fact that the receivers, shortly after their appointment, busied themselves in bringing about a cancellation of all outstanding risks, and for that purpose returned or released premiums for unexpired terms and so extinguished the possibility of liability subsequently arising. They succeeded in canceling six-sevenths or more of the aggregate insurance outstanding at the time of their appointment. The Munich points out that it was to continue, even after the termination of the notice of cancellation, to participate in all insurance granted or renewed by the United during the currency of such notice, as well as to remain liable for its share of the claims arising out of such insurance, and out of insurance in force at the time the notice was given. It says that, if nothing had happened to the United, the latter, after January 1, 1911, would have received premiums in which it would have been entitled to share, and that by the United's failure to continue business and the cancellations of policies therefrom resulting, it is deprived of the consideration, or a part of the consideration, moving to it in return for its assumption of liability, and it relies upon the doctrine laid down in Central Trust Co. v. Chicago Auditorium, 240 U. S. 581–591, 36 Sup. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580, as applicable and therefore controlling.

There until bankruptcy came, the contract was still alive, and all the obligations of each party were still in full force. Under it the bankrupt had services to render. That was not the situation in the instant case. By the election of the Munich, the contract ended on January 1, 1911, except for the settlement by one or the other of the obligations already incurred. Thereafter the Munich had no interest in any new insurance which the United might write. It had no right to require that the United should continue in the business in which it had of its own free will declined to have lot or part. After the expiration of the notice of termination, the United was free to decide for itself whether it would go on, and the Munich had no right to complain that the decision was in the negative. When such a concern ceases to do new business, it must, either in one form or another, reinsure its outstanding risks, or do what it can to terminate, so soon as may be, its liability upon them. To keep up its complete organization for the mere purpose of handling insurance already written and such renewals as might be brought about, would be ruinous, and no such contract as this between insurance companies can reasonably be interpreted as binding either of the parties to such waste of money.

The United tried to reinsure, but, so far from being able to do so, it could not find anybody willing to assume its liabilities in exchange for its assets; that is, in the judgment of the other companies who had, at its instance, examined its books with a view of taking over its business, it had already incurred obligations which would seemingly entail a loss upon it exceeding the amount of its capital. For a third of the larger part of these losses, the Munich would be liable. In that state

of things, all that the Munich could justly require was that the United should, in good faith, exercise reasonable care to wind up its business to the best advantage, and that, so far as the record discloses, is precisely what the receivers did.

The Munich was to pay one-half of the net liability retained by the United. There was no limitation as to the amount for which it might become bound. When the contract was made, it was quite possible that the obligations which in five years the United might assume would ultimately entail a liability exceeding its capital and surplus. In that event, it would have to close its doors and liquidate its business, and, if it did, according to the Munich's present contention, the latter would be discharged; that is to say, if the United's losses were very great, the Munich would be released from obligation to pay any of them. Such a claim is its own best answer. It is therefore unnecessary to decide whether, as the United asserts, the Munich has estopped itself from setting up a defense which has, on other grounds, been held bad. The litigation between the two companies continued for years after the United went into receivers' hands, and after the latter had done all in their power to bring about a cancellation of the outstanding risks.

Never, until the institution of these proceedings, did the Munich raise the point upon which it now seeks to rely. It allowed all the other courts to assume that it did not dispute its obligation to account at the proper time and in the appropriate proceeding. If for the purposes of this case it be assumed that all this did not work a technical estoppel, it at least shows that the present defense had not then suggested itself to the ingenuity of any of the able, astute, and experienced counsel who appeared for the Munich. It is difficult to resist the conclusion that it would not so long have escaped their attention, had there been anything of substance in it.

[2] The United is therefore entitled to an accounting. Even so, the Munich says that, when such an accounting is had, it can be charged only with one-third of the sums actually paid out upon the bonds or policies upon which it had, in the language of the agreement, "assumed liability." It bases this contention upon that portion of article 13 of the agreement which, having provided for an accounting not later than two years after the expiration of the contract, says:

"If claims are still outstanding, the proper reserve shall be charged, and, after the final settlement of each of such claims, the Munich will be paid any difference in its favor, and pay any difference in favor of the United."

It argues that final "settlement" here means payment. So to hold would run counter to the whole scheme of the agreement between the companies. What the Munich assumed was one-third of the liability, and there is nothing anywhere to suggest that the parties intended that the lapse of time should in any wise change this obligation. The words "final settlement," as used in this contract, must be held to mean the fixing by agreement or judicial determination of the amount due by the United on the bonds or policies for which the Munich assumed a one-third liability.

A decree in accordance with these conclusions may be submitted.