# FIDELITY AND DEPOSIT COMPANY *vs.* EDWIN W. POE ET AL., RECEIVERS.

*Surety Company—Effect of Receivership—Insolvency—Right to Premiums.*

It is the duty of the court, in passing on a demurrer to the replication, to inspect the whole record and, mounting up to the first fault, to give judgment against the party committing the first material error, and, if the pleas are bad, so to hold under the demurrer.                                                     p. 489

That, of several surety companies which were joint sureties on various bonds, one was placed in the hands of receivers during the life of the bonds, did not deprive such company or its receivers of the right to its share of the annual premiums on the bonds, paid after the appointment of receivers, such appointment not establishing the insolvency of that company or its inability to pay losses under the bonds, it not being adjudicated insolvent during the life of the bonds, and there being in fact no losses under the bonds.                   pp. 496-500

In an action by receivers of a company, which was surety on a contractor's bond, against its cosurety, for a share of the premiums paid for the bond, *held* that it was proper to refuse a prayer that the plaintiff could not recover if, after appointment of the receivers, there were changes made in the contract, to which the receivers did not assent, in the absence of evidence as to the character of such alleged changes.          p. 501

Defendant having continued to collect the premiums on the bond although knowing that there had been changes in the contract, could not assert such changes as a ground for refusing to pay plaintiff its share of the premiums.          p. 501

*Decided March 20th, 1925.*

Appeal from the Superior Court of Baltimore City (STANTON, J.).

Action by Edwin W. Poe and others, receivers of the United Surety Company, against the Fidelity and Deposit Company of Maryland. From a judgment for plaintiffs, defendant appeals. Affirmed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and BOND, JJ.

*Washington Bowie,* with whom were *Francis K. Murray* and *Stephen W. Gambrill* on the brief, for the appellant.

*Robert W. Williams* and *J. Kemp Bartlett, Jr.,* with whom were *Bartlett, Poe & Claggett,* and *Janney, Ober, Slingluff & Williams* on the brief, for the appellees.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment recovered by the appellees, the receivers of the United Surety Company, against the appellant, the Fidelity and Deposit Company, in the Superior Court of Baltimore City.

The declaration consists of six of the common counts and four special counts.

In the seventh count, the first of the special counts, it was alleged

"That the United Surety Company, on or about February 7, 1910, executed a bond in the penalty of fifty thousand dollars on behalf of John C. Rodgers, John J. Hagerty and James M. Rodgers, in favor of the City of New York, guaranteeing the completion of the Kensico Dam and appurtenant works, * * * and in consideration of the execution of such bond, John C. Rodgers, John J. Hagerty and James M. Rodgers agreed to pay to the United Surety Company for executing said bond and continuing the same the sum of nineteen hundred and eighty-eight dollars and twenty-six cents per annum, until the United Surety Company should, in the manner provided by law, be discharged or released from any and all liability and responsibility upon and from said bond and all matters

arising thereon, and proper legal evidence of such discharge or release be served on the United Surety Company; that thereafter John C. Rodgers, John J. Hagerty and James M. Rodgers assigned the contract covered by said bond to H. S. Kerbaugh, Inc., and the said H. S. Kerbaugh, Inc., assumed the obligation of the said Rodgers and Hagerty to pay premiums as aforesaid; and that thereafter the Fidelity and Deposit Company, as agent and fiduciary of the United Surety Company and these Receivers, received from H. S. Kerbaugh, Inc., the net sum of sixty-six hundred and seventeen dollars and eleven cents in installments and on the dates set forth in the account marked 'Exhibit B,' attached to and made a part of this declaration, in accordance with the agreement of John C. Rodgers, John J. Hagerty and James M. Rodgers made to the United Surety Company, which said agreement was assumed, as aforesaid, by H. S. Kerbaugh, Inc.; that demand has been made upon the defendant to pay to the plaintiffs said amount so collected upon behalf of the United Surety Company and these plaintiffs, but payment has been refused and no part of the same has ever been paid."

It was upon the eighth count that the plaintiffs sought to recover an annual premium collected by the Fidelity and Deposit Company, its agent and fiduciary, upon a bond executed on or about December 20th, 1909, by the United Surety Company, together with the Fidelity and Deposit Company, in the penalty of two million dollars "running to the City of New York" guaranteeing the completion of a contract for the construction of the municipal building by Thompson-Starrett Company, and which said sum so collected has never been paid to the United Surety Company. The amount of liability assumed by the United Surety Company by the execution of said bond was sixty thousand dollars; and for the assumption of such liability it was to be paid by the principals of the bond the sum of eight hundred eighty-four dollars and twenty-five cents per annum, in

advance, until it was released from such liability in the manner set forth in the aforegoing eighth count of the declaration; and as alleged therein, the Fidelity and Deposit Company, as agent of the United Surety Company, on or about January 6, 1911, collected one annual premium, amounting to eight hundred eighty-four dollars and twenty-five cents, from which amount the Fidelity and Deposit Company was authorized to deduct a commission of two hundred sixty-five dollars and twenty-seven cents for the collection of such premium, leaving due and unpaid to the United Surety Company and the plaintiffs a balance of six hundred eighteen dollars and ninety-eight cents.

The ninth count was on a bond executed by the United Surety Company, together with the Fidelity and Deposit Company, on or about the 9th day of December, 1909, on behalf of Frank B. Lown, executor, conditioned upon the faithful performance of his duties as such executor. In consideration of the execution of the bond by the United Surety Company, Frank B. Lown agreed to pay to it a premium of four hundred and thirty-eight dollars and eighty-nine cents for the first year, and thereafter an annual premium of two hundred and thirty-eight dollars and eighty-eight cents until the United Surety Company was discharged or released in the manner stated in the aforegoing count from any and all liability under said bond and all matters arising therefrom; and thereafter the defendant, acting as agent and fiduciary of the United Surety Company and the plaintiffs, collected from Frank B. Lown, from time to time, as shown by said "Exhibit B" the net sum of thirteen hundred and ten dollars and fifty-one cents, which it has never paid over to the United Surety Company, though demand therefor has been made upon it.

In the tenth count recovery was sought on a bond executed on the 17th day of September, 1909, by the United Surety Company, together with the Fidelity and Deposit Company, in behalf of Bessie M. Leggett *et al.,* administratrix, for the faithful performance of her duties as such administratrix;

and in consideration of the execution of said bond, the said Bessie M. Leggett agreed to pay to the United Surety Company an annual premium of eighty-nine dollars and fifty cents, until the United Surety Company was released and discharged in the manner stated in the aforegoing counts; "and thereafter the defendant, acting as agent and fiduciary of the United Surety Company * * *, collected from Bessie M. Leggett on the respective dates set forth in * * * 'Exhibit B' (attached to the declaration) the net sum of fifty-one dollars and eighty-nine cents," which amount has never been paid to the United Surety Company although demand has been made upon the defendant therefor.

To the declaration, the defendant filed, on the 25th day of June thereafter, the general issue pleas and the plea of payment, and later, on the fourth day of October of the same year, filed two others known as its fourth and fifth pleas.

In its fourth plea it was stated

That John C. Rodgers, John J. Hagerty, and James M. Rodgers had a contract with the City of New York, for the construction and completion of the Kensico Dam and appurtenant works, for which they were to be paid the sum of $7,953,050. That they applied to the defendant to become surety upon a bond to be given to the City of New York, guaranteeing the completion of said contract and to procure other sureties, to the end that the amount of bond required, to wit, one million dollars, might be furnished and filed as required by the terms of the contract; that the defendant became surety upon a bond in the penalty of $250,000 and procured the United Surety Company, together with other surety companies, to execute bonds of like tenor and effect, which with the bond executed by the defendant, amounted in all to the sum of one million dollars, the defendant thereby becoming what is known in surety parlance as the originating company. That in accordance with the custom and practice in such cases the annual premium upon all the bonds so executed, including the bond of the United Surety Company, were payable to the Fidelity and

Deposit Company, the originating company. "That under the terms and conditions of said bonds each surety thereon was liable up to the penalty of its particular bond for the faithful performance of the entire contract. Therefore, in the event of the withdrawal or release of any one or more of said sureties the hazard or liability as to the remaining sureties was increased to the extent of the liability of the withdrawing surety or sureties. That thereafter H. S. Kerbaugh, Incorporated (which had by consent of all the parties to said contract and bonds been substituted in the place and stead of said John C. Rodgers *et al.*), the contractors on whose behalf the various bonds were given and the obligee therein, applied to the various sureties on said bonds to execute an agreement consenting to certain changes and modifications in said contract and agreeing that their said bonds should be deemed as conditioned for the performance of the contract as so modified with the same force and effect as if the said contract has been originally drawn and executed as so modified. The said modifications or changes materially altered the terms of said contract in that under the contract payment for clearing areas was not to be made until the flooding of the areas cleared or the complete filling of the reservoir, whereas under the proposed change it was provided that clearing should be done from time to time and payment therefor made for such clearing as the work progressed, and that payment should be made but once for clearing any given area regardless of how many times the contractor might be required to go over it, and that clearing should be done as often as necessary in order to insure the space being in proper condition before flooding or when the reservoir was completely filled. That under said contract the areas to be cleared were very extensive and the provision that the contractor would be paid but once for clearing, although it might be required that the site be cleared many times owing to the annual growth of trees, bushes, and shrubbery, materially increased the risk and hazard of said contract. That all of the sure-

ties on said bonds executed said agreement save and
except the United Surety Company, which company
neglected, failed and refused to sign said agreement.
That the City of New York required said contractor
to procure the consent of the sureties on said con-
tract to said modifications and when the plaintiffs here-
in refused to consent to said modifications, the City
of New York intervened in the receivership proceed-
ings of the United Surety Company and petitioned
the court therein that the receivers might be required
and compelled to assent to said change or modifica-
tions. That said receivers, the plaintiffs herein, took
the position that the United Surety Company was no
longer a going concern and that they should not by
reason thereof execute any consent or agreements
which might change or affect the status of the United
Surety Company, and thereupon the court refused to
require them to execute said consent. That thereupon
the City of New York elected to make the said altera-
tion and change in said contract and did make said
alteration and change without the consent of the Uni-
ted Surety Company. That thereupon the contract
was so materially changed and modified that in con-
sequence of the refusal of the United Surety Company
to sign said agreement as aforesaid it became released
and discharged from all liability on its said bond, and
it therefore ceased to be entitled to share in or to re-
ceive any part of the premium paid to the defendant,
as said originating company, after the contract had
been changed and modified."

For a fifth plea the defendant stated

"That the bond dated on or about the seventh day of
February, 1910, in the penalty of $50,000 on behalf of
John C. Rodgers *et al.;* the bond dated on or about
December twentieth, 1909, in the penalty of $2,000,000
on behalf of the Thompson-Starrett Company; the
bond dated on or about December ninth, 1909, on be-
haf of Frank B. Lown, and the bond dated on or
about September seventeenth, 1909, on behalf of Bes-
sie M. Leggett, were bonds in which the defendant

was the originating company. That the obligation and
duty of this defendant to the said John C. Rodgers
*et al.,* the principals upon each of the said bonds cre-
ated by virtue of the application to this defendant to
procure the necessary sureties upon their said bonds,
was to procure other sureties that would be acceptable
to the various authorities required by law to approving
said bonds on behalf of the obligees. And the defend-
ant procured the United Surety Company and others
to become surety thereon, and in accordance with the
custom and usage among surety companies the entire
premium was to be received by the defendant and then
diverted among the various surety companies in ac-
cordance with the penalties of their bonds and (or)
the agreements among the sureties as to the amount of
liability to be carried by each. That on or about the
thirteenth day of January, 1911, receivers were ap-
pointed for the United Surety Company and were di-
rected to wind up and close its affairs. That from and
after the appointment of said receivers the United
Surety Company was no longer in a position to
promptly respond to and perform its obligations. That
this defendant was surety upon various bonds and
obligations upon which the United Surety Company
was principal, and that after the thirteenth day of
January, 1911, the said United Surety Company de-
faulted and failed to perform its various contracts and
obligations upon which this defendant was surety,
with the result that this defendant was called upon to
pay and did pay large sums of money on account of
the obligations it had executed as surety for the said
United Surety Company, and that although the cor-
rectness of the said claims was checked and admitted
by the plaintiffs they failed and refused to pay or to
reimburse the defendant after it had paid any of said
sums so paid by the defendant, nor have the plaintiffs
paid the same to this day, and the defendant there-
fore says that the United Surety Company was not
entitled to participate in or receive any premiums col-
lected by the defendant on the bonds of John C. Rodg-
ers *et al.,* Thompson-Starrett Company, Frank B.

Lown, and Bessie M. Leggett after the date of the appointment of said receivers."

The plaintiffs for replication to defendant's fourth plea said:

"That John C. Rodgers, John J. Hagerty and James M. Rodgers applied to the United Surety Company for a bond of $50,000 to be executed by the United Surety Company in favor of the City of New York, and prior to the execution of such bond by the United Surety Company and as a condition thereto the said John C. Rodgers, John J. Hagerty and James M. Rodgers executed a written application and indemnity agreement, a copy of which is attached hereto, marked 'Indemnity Agreement,' and prayed to be taken as a part of this replication herein.

"Thereafter the defendant and its attorneys were in correspondence with the plaintiffs and their attorneys with respect to the said bond in the penalty of $50,000 executed by the United Surety Company in favor of the City of New York, and with respect to the premiums on said bond and the termination of liability of the United Surety Company and its estate by reason thereof, copies of the letters forming this correspondence being attached hereto, marked 'Correspondence,' and prayed to be taken as a part of this replication."

And for replication to the fifth plea the plaintiff said:

"That the principals, John C. Rodgers *et al.,* executed an application and indemnity agreement in favor of the United Surety Company, as set forth in the plaintiff's replication to the defendant's fourth plea, and that the other three principals referred to in the defendant's fifth plea, to wit, Frank B. Lown, Bessie M. Leggett and Thompson-Starrett Company, likewise executed indemnity agreements of substantially the same tenor and effect in favor of the United Surety Company, and the execution of such indemnity agreements was a condition precedent to the execution

by the United Surety Company of the four bonds referred to in the defendant's fifth plea.

. "Upon the appointment of receivers of the United Surety Company due notice was given to the obligees upon the four bonds of the United Surety Company referred to in the defendant's fifth plea to prove any claims arising from said bonds against the estate of the United Surety Company in equity proceedings pending in the Circuit Court of Balitmore City, and no claim was ever proven against the estate of the United Surety Company growing out of any one of the four bonds referred to, nor were any of the said four bonds, nor the bonds of the defendant or other sureties made in relation therewith on behalf of the principals named in said fifth plea, ever breached, and no losses resulted to any of the said sureties by reason of said bonds, or any of them."

Thereafter on the 16th day of January, 1924, the defendant asked for and obtained leave of the court to amend its fifth plea, by eliminating therefrom all reference to the Lown Bond, and to file an additional plea known as its sixth plea, in which it is stated:

"That in December, 1909, one Frank B. Lown applied to the United Surety Company to become surety upon his bond as executor of Charles H. Roberts, deceased, in the penalty of $1,500,000, in the Surrogate's Court of Ulster County, New York. That the United Surety Company requested the defendant to become co-surety with it upon said bond, which the defendant company did. That the United Surety Company collected the entire premium on said bond, and paid to the defendant its pro rata part, to wit, two-thirds thereof less thirty per cent. commission in accordance with the custom and practice among surety companies. And when the renewal or annual premium became due the United Surety Company likewise collected and divided the premium, less its commission of thirty per cent. That after the appointment of receivers for the United Surety Company the agent, or broker, who placed this business with the Uni-

ted Surety Company refused and declined to pay to it further annual premiums, but, instead, paid them to the defendant as the remaining solvent surety, although there was no contract between said Lown and said Fidelity and Deposit Company of Maryland other than that arising from the relation of principal and surety.

"That prior to the making of any payments to the defendant by said Frank B. Lown, the defendant, on April 24th, 1911, offered to carry the entire liability, retaining the entire annual premium."

Thereafter, on January 24th, 1924, a demurrer was filed to the replication to the fourth and fifth pleas. This made it the duty of the court, in passing upon such demurrer, to inspect the whole record and, mounting up to the first fault, to give judgment against the party committing the first material error, and as the court, in its opinion, found the fourth and fifth pleas bad, they were so held under the demurrer; and a demurrer filed to the sixth plea was sustained.

In this condition of the pleading, the case was tried by the judge without the aid of a jury, and the verdict and judgment being in favor of the plaintiff, the defendant has appealed.

The evidence discloses that the United Surety Company became cosurety on the four bonds named in the declaration. In three of these, the defendant was the originating company, or the company which procured the business, while in the other, the Lown bond, the United Surety was the originating company. As shown by the record, the practice, in such cases, is for the originating company to collect the entire premium upon the bond, that is, the amounts owing to its co-sureties as well as the amount owing to it, and after deducting thirty per cent. from the amount so collected for them, as commissions therefor, to pay over to each of them the balance owing to it. Pursuant to such practice the defendant, in the cases in which it was the originating

company, collected not only the premium owing to it, but also the premium owing to each of its co-sureties, including the plaintiffs, and paid over to each of them, except the plaintiffs, the premiums collected for them, less the commissions aforesaid; but, of the premiums collected by the defendant for the United Surety Company, no part thereof collected after the appointment of the receivers on January 13th, 1911, was paid over either to the company or its receivers. The United Surety Company, in the case of the Lown bond, where it was the originating company, collected the annual premiums on the bond, including those owing to the defendant, to the time of the appointment of receivers, and of such premiums, it paid to the defendant the amounts to which it was entitled, less commissions for collection. Thereafter the principal of the bond, without the consent of the plaintiffs, paid to the defendant in each and every year the entire premium on the bond, of which no part has ever been paid to the plaintiffs.

By the bonds mentioned above the United Surety Company assumed liability to the extent shown by the record, and for which it was to be paid the annual premiums agreed upon "until (as stated in the agreements) the United Surety Company shall in the manner provided by law be discharged or released from any and all liability and responsibility upon and from said bond and all matters arising therefrom, and proper legal evidence of such discharge, or release be served on the United Surety Company."

Upon the bond of Rodgers, Hagerty and Rodgers, there were collected by the defendant for and on behalf of the plaintiffs and not turned over to it, net premiums amounting to $6,617.11. The first of these collections was on June 29th, 1911, and the last on March 6th, 1916. The contract in that case, which was for the construction of the Kensico Dam was, within a few months after its execution, assigned to H. S. Kerbaugh, Inc., to which assignment the United Surety Company assented on the 7th day of November, 1910.

The defendant collected for the plaintiffs net premiums on the three remaining bonds, which were not turned over by them to the plaintiffs, of the following sums, to wit:   On the Lown bond, $1,310.51, on the Leggett bond, $51.89, and on the Thompson-Starrett bond, $618.98, making a total (including the net premiums collected and not paid over by the defendant on the Rodgers, Hagerty and Rodgers bond) of $8,598.49 ; and as disclosed by the evidence, no loss was suffered by any of the indemnifying companies upon any of said bonds.

The defendant's grounds for its refusal to turn over to the plaintiffs the amounts so collected by it for them are disclosed by the defendant's contention raised and presented by its pleas and prayers.   These contentions are as follows:

1st.   That if the United Surety Company, a co-surety of the defendant, "from and after the appointment of the receivers * * * did not promptly pay claims that were made upon it or was not in a position so to do, that the premiums on said bonds should be divided among the other sureties on the said bond."

2nd.   That as the United Surety Company "is now insolvent, and * * * no new business was written or new obligations incurred by the receivers after their appointment; * * * the insolvency relates or goes back to the time of the appointment of the receivers and they (the receivers) are not entitled to collect premiums on bonds for, or covering any period subsequent to the appointment of the receivers."

3rd.   As "the contract in the John C. Rodgers case was altered or changed after the appointment of the receivers, and the receivers did not assent thereto; * * * the plaintiffs are not entitled to recover for any portion of the premiums on the Rodgers-Kerbaugh bond."

In the evidence of Mr. Janney, one of the receivers, is found a statement that government representatives, for several weeks prior to the appointment of the receivers, had been examining the affairs of the United Surety Company and had made a complete audit thereof, and that from such

examination they had found its capital stock so much impaired that it was determined the company should no longer do business; and that the Insurance Commissioner of Maryland made the same ruling and stopped the company from doing business because of the impairment of the capital stock; but at such time, as stated by Mr. Janney, the company was not shown, or thought, to be insolvent; in fact it, for some years thereafter, was considered and treated as a solvent company, not only by the receivers and those dealing with them, but also by this Court, as well, in the cases decided by it growing out of the receivership; and it was not until the 25th day of February, 1921, long after the liability under the bonds had ceased with no loss to the indemnifying companies, that it was adjudicated insolvent. It is true that, upon the appointment of the receivers, it was held by the lower court that the effect of the receivership, irrespective of solvency *vel non,* was to break the outstanding contracts of the company and to disable it from carrying out its contracts, and as expressed by Mr. Janney, "justice required that every bond holder should know that he was not protected any more, but would have a claim due to the breach of contract rather than a claim on the bond." In accordance with this ruling, the order of the court passed on October 19th, 1912, fixing the time for filing claims, was sent to all the bond holders of the company, that is, all the obligees named in the bonds; and the receivers acted upon such ruling of the lower court until the same was reversed by this Court in *United States v. Poe,* 120 Md. 89, decided on February 31st, 1913, in which case this Court in reviewing the order of October 10th, 1912, held, as stated in the syllabus, which correctly states what was decided therein, that "where a bonding or surety company has not been declared insolvent, equity will not, in procedings for its voluntary dissolution, pass any order which might have the effect of discharging it from its obligations upon which default has not occurred or been discovered."

It was while the receivers were acting upon the lower court's order, before its reversal by this Court, that Mr.

Janney, on behalf of the receivers, wrote the letter of December 3rd, 1912, in reply to one from the Fidelity and Deposit Company written by Mr. Bowie on the 27th day of the preceding month, inclosing requests of indemnitors that the United Surety Company execute an agreement for the modification of the Rodgers contract, the one referred to in the third contention of the defendant. In this letter of December 3rd, 1912, it is stated:

"The receivers feel that it is their duty to decline to have this agreement of modification executed and suggest the propriety of other surety company taking over their liability and giving them a release therefor, retaining all future premiums for the account of such as may assume this obligation. This is not only our view as receivers engaged in liquidating the United Surety Company, but it is obvious that we are not in position to represent to the Board of Water Supply of New York that our obligation is a continuing one, in view of the court's order fixing a limited time for those insured by our bonds to procure substitutions and claim for their loss, if any, against this company.

"We are returning you herewith the papers which you sent, and request that you notify us when proper substitution of surety has been made."

A year later, on the 4th day of December, 1913, the Fidelity and Deposit Company wrote the United Surety Company saying:

"Replying ot Mr. Hine's letter of the 29th ultimo I beg to advise you that as far as I know nothing has been done towards taking over the liability by the other companies, inasmuch as the proposition made by Mr. Janney that the other companies should carry the liability in consideration of the future premiums was not considered an equitable proposition. If the receivers will pay to the other companies in cash the amount of premiums the United Surety has received, I believe there will be no difficulty in having the United Surety Company absolutely released."

On February 18th, 1915, after the lapse of more than another year, Colonel Bowie, general counsel of the Fidelity and Deposit Company, wrote the receivers wishing to know upon what basis they claimed the right to premiums on the Rodgers bond, and in his letter saying that, as he understood, the modification of the contract in that case, which was submitted to them for their approval and consent and which was refused by them, had since been made with the consent of all the other sureties; and suggested that whatever might have been the status of their company as to liability upon the bond prior to that modification, the acceptance by the city of the modified contract without their assent would release them from further liability. But he went on to say

> "On the other hand, it now may well be suggested that if the United Surety, with knowledge of the modification of the contract, even though it failed to assent in writing, should continue to accept premiums, it would be stopped from setting up the modification as a release of its liability. Hence, I think it has now come when the receivers must consider and determine just what their attitude is in this matter." * * * "The Fidelity and Deposit Company's interest in this matter is possibly that of an agent only and its duty being to see that the premiums reach the right destination. Informal suggestion has been made to it by the other sureties that inasmuch as they, the sureties other than the United, being the only ones in a position to respond to the claims of the City of New York on this bond and thus practically carrying all of the liability, that they should receive the premiums to the exclusion of the United."

In reply to Mr. Bowie's letter of February 18th, Mr. Janney, on the 23rd day of the same month wrote him:

> "The receivers of the United Surety Company have always been willing to reduce the liability of the estate by consenting to the cancellation of the risks upon receiving the premiums to the date of cancellation or release.

‹ "On the above bond (the Rodgers bond) the United
Surety Company is bound as co-surety, and it is pos-
sible that a release from the obligee could not be ob-
tained, but, as indicated in our letter to you of De-
cember 3, 1912, we shall be pleased to accept the in-
demnity against loss of your company, or of any one
or more of the companies writing this risk, and to
waive all participation in the premium from the re-
ceipt of such indemnity.

"We have no knowledge of what, if anything, has
been done which might tend to release the surety at
this time, but this knowledge is in the possession of
the other sureties on the bond. If, therefore, you feel,
in consideration of the facts, that there is no liability
upon the estate of the United Surety Company, the
indemnity you would give the receivers would involve
no risk. We would not feel justified, however, in as-
suming that we had been released, as we know of no
occurrence which would have that effect. As you per-
ceive, this is practically a reaffirmation of the position
taken in our letter of December 3, 1912, and we hope
you will take the matter off our hands."

Colonel Bowie, in reply to Mr. Janney's letter of February
23rd, wrote him on the 27th day of the same month saying
that the Rodgers or Kerbaugh bond at that time, according to
his last advices, had several years more to run; that his com-
pany, the Fidelity and Deposit, had collected the renewal
premiums on that bond for all companies and had credited
the United Surety Company with premiums collected for it
for the years 1911, 1912, 1913 and 1914, which, with com-
missions deducted, amounted at that time to $5,617.12. He
then states in his letter

"The question has been raised as to whether under
the circumstances in this case the receivers are enti-
tled to renewal premiums, particularly the last two,
which became due and were paid after the refusal of
the receivers to assent to the modification in Decem-
ber, 1912, and likewise as to any further premiums.

"The Fidelity & Deposit Company will give to the
receivers of the United Surety Company a suitable re-
insurance agreement or bond of indemnity guarantee-
ing to protect and save harmless the said receivers
from any and all claim or claims that might be made
against them by virtue of this bond, the effect of such
an agreement beng to substitute the Fidelity for the
United Surety as far as liability on this bond is con-
cerned, it being a protection to the United from all
claims from the time the bond was written.   The con-
sideration for this agreement is that the Fidelity be
authorized to retain the last two annual premiums col-
lected as above, to wit, for the years 1913, 1914 and to
retain the United's share of all further premium or
premiums on said bond.

"It is of course understood that this principle is
made by virtue of the peculiar circumstances of this
case and is not to be taken as a basis for similar rein-
surance agreements."

The above letter of Mr. Bowie was answered by Mr.
Janney on March 3rd, 1915, in which he said:

"After full consideration of the circumstances sur-
rounding this risk and the present status thereof, I
am directed to advise that the receivers do not think it
will be advantageous to the estate in their hands that
the terms you suggest shall be accepted."

It will be seen from the above correspondence that the
defendant took the position that no part of the premiums
in the hands of the defendant, collected by it for the United
Surety Company after the appointment of the plaintiffs as
receivers, was payable to them, because, as claimed by the
defendant, the United Surety Company from and after that
time was insolvent and unable to pay losses, if any, that the
obligees might sustain under the contracts for which the
bonds were given, and as it was insolvent and unable to pay
such losses, it thereafter was subject to no risk or liability
as co-surety under the bond, and, as contended by the defend-
ant, the result thereof was that the liability originally as-

sumed by the United Surety Company fell upon the defendant and the other co-sureties.   But was the United Surety Company insolvent at that time, and because of such insolvency was it discharged and released from the risk and liability assumed by it in the execution of the bonds?   This question, we think, has been fully answered in the negative by the decisions of this Court in the cases of *Vandiver v. Poe,* 119 Md. 348; *United States v. Poe,* 120 Md. 89, and *Barber Asphalt Paving Company v. Poe,* 139 Md. 332.   In the first of these cases (*Vandiver v. Poe*), decided January 14th, 1913, two years after the appointment of the receivers, the United Surety Company was considered and treated by the parties as well as by the court as a solvent company, and it was upon such fact that the decision in that case rested.   In the later case of *United States v. Poe, supra.,* from which we have already quoted, it was held that as the company had not been declared or adjudicated insolvent, the proceedings for dissolution and the appointment of the receivers thereunder did not have the effect of discharging it from its obligations.

In the still later case of *Barber Asphalt Paving Company v. Poe,* decided by this Court so late as the 29th day of June, 1921, and long after all liability under the bonds had ceased, the United Surety Company was on a large number of construction and maintenance bonds, given by the appellant in that case to the City of Chicago for paving streets in that city, the most of them having been given in 1906, some covering a period of ten and others a period of five years. On February 17th, 1913, at the request of the city, the appellant gave new bonds, with the United States Fidelity and Guaranty Company as surety on certain bonds, upon which the United Surety Company was originally surety. When the case came before the auditor, a claim was filed with him by the Barber Asphalt Paving Company for unearned premiums on bonds upon which the United Surety Company was surety, amounting to $3,141.99.   It also filed a claim for the costs of the new bonds amounting to $633.75.

The auditor disallowed both claims, and in so doing was sustained by the Circuit Court of Baltimore City. It was from the order of the court disallowing these claims that an appeal was taken to this Court. It was contended by the receivers that it was not shown that the United Surety Company was released from its obligations, and hence no unearned premiums could be recovered by the appellant.

This Court, speaking through Judge Boyd, sustained this contention of the appellants, and to that extent affirmed the order of the court below, though it reversed that part of the order refusing the allowance of the costs of the new bonds. The Court in that case said "there is a clear distinction between this case and the *Casualty Insurance Company's Case,* 82 Md. 535. That company had been adjudicated to be insolvent, and the Court was dealing then with such a company, while the United Surety Company had not prior to the time the new bonds were given, been declared to be insolvent, but on the contrary it was confidently believed by the receivers, for some time after they were appointed, that it was solvent, and possibly might be able to resume business." The Court then quoted approvingly from *Vandiver v. Poe, supra,* and *United States v. Poe* in distinguishing them from the *Casualty Company's Case,* and concluded his remarks relative thereto by saying: "Chief Judge McSherry (who prepared that opinion) was then speaking of corporations which had been declared insolvent. In the case of United Surety Company, the first time the court said it was insolvent, so far as has been brought to our attention, was on February 25th, 1921, according to a copy of the decree filed by agreement of the solicitors * * *. It is true that the company was unable to issue new policies shortly after the receivers were appointed, and was prohibited from doing so in some states until it restored the surplus and capital which had been lost by bad management, and of course, after the company went into the hands of receivers, it could not be expected that it could get new business, unless its stock holders or others came to its relief and put it on a proper

basis, but it, nevertheless, had not been declared insolvent, and proceedings had not been taken for its dissolution. As conditions existed when the new bonds were given, it could not be said that the United Surety Company would not be able to meet demands on it in case of default of its principals. There is no evidence that there was any default by the principal for the periods covered by the bonds." And later in the opinion, on page 337, the Court said: "During the period between January 13th, 1911, the date of the receivership, and the time it gave new bonds, there can be no question about the liability of the United Surety Company still continuing."

Upon the question of insolvency it might also be added that there is no evidence in this case not found in *Barber Asphalt Paving Company v. Poe,* showing the insolvency of the United Surety Company during the periods of the life of these bonds but, on the contrary, Mr. Janney, while upon the stand, speaking, it is true, of the financial standing of the company at the time of the appointment of the receivers, said that "You could take its assets (United Surety Company's assets) and making a fair estimate of their probable value and the claims that then existed and making a fair estimate of what those claims would result in, charging off appropriate reserves, you did not have a condition of insolvency. Of course, with millions of dollars of contingencies outstanding it was always probable that it would ultimately become insolvent because of the maturity of claims which we had no record of and which at that time had not occurred and which actually occurred."

As the United Surety Company was not permitted to assume new liability or to continue the operation of its business by which it might have acquired profits to aid in the payment of subsequently occurring losses, it was anxious to cancel its liability for such losses, and this, it seems, was the policy adopted by the receivers and the one they attempted to carry out with the defendant company, but was unable to do so because of the latter's belief, as expressed by it, that the

adjustment proposed was inequitable, unless it gave to the defendant the premiums collected by it for the plaintiffs from the principals on the bonds for the period between the appointment of receivers and the cancellation of the United Surety Company's liabilities.

The failure to agree as to the disposition of the premiums for the time mentioned resulted in nothing being done by any of the parties interested or concerned in the possible failure of the United Surety Company to meet the payment of its share, if any, of the losses under the bonds.

Had they, because of the financial condition of the United Surety Company, reasonably apprehended loss, they could have re-insured against such loss, and it would seem from the decision in *Barber Asphalt Paving Company v. Poe* that the cost of such re-insurance would have been chargeable against the plaintiffs, but this was not done, and things were allowed to drift until it was shown that there were no losses suffered for which the bonds were liable.

It is clear, we think, from the above mentioned decisions of this Court, that the United Surety Company was liable for loss assumed by it under the bonds to the time it was adjudicated insolvent, which was after the life of the bonds had ended; and had there been a loss under the bonds, the assets of the United Surety Company, properly applicable to the payment of the same, would have gone towards paying its part of such losses, which fact alone shows the injustice of withdrawing the whole of the premiums from the United Surety Company, when their inability to pay any part thereof, had there been a loss, is not shown. And as there was no loss under the bonds, it would, we think, under the facts and circumstances of the case, be inequitable to allow the defendant to retain the premiums.

Had the court granted the defendant's third, fourth and sixth prayers, the instructions therein contained would have been in conflict with the views expressed in the decisions of this Court already cited, and those prayers, we think, were properly refused.

In the defendant's fifth prayer, the court was asked to rule as a matter of law that if it found upon the evidence that the contract in the John C. Rodgers case was altered or changed after the appointment of the receivers and they did not assent thereto, the plaintiffs were not entitled to recover any portion of the premiums on that bond accruing after such change or alteration was made.

The changes and alterations mentioned in this prayer are not shown by the evidence in the case. The original contract, so far as we are able to discover, is not in the record, and there is no evidence showing of what the changes or alterations consisted. They are stated in the fourth plea, to which a demurrer was sustained, the court holding that such facts were admissible under the general issue plea, but the record fails to disclose that any evidence was offered showing alterations or changes in the original contract. This objection, we think, is sufficient to sustain the ruling of the court upon this prayer, but there are other reasons in our opinion to justify the court's ruling. The defendant in the collection of the premiums was acting as agent for the plaintiffs, and not only it, but all of the parties interested in the transaction, knew that some alterations were made in the contract, though the record does not show what those alterations and changes were, and notwithstanding such knowledge the defendant continued thereafter to collect the premiums for the plaintiffs and the principals continued to pay them, and it is now the defendant only that is holding out against the payment of them to the plaintiffs, at first saying that it held them because they, for the reasons already stated, should be distributed proportionately among the sureties other than the plaintiffs, according to their respective liabilities, and at a later time stating that it was withholding them until it was paid the money owing to it by the plaintiffs, which was allowed them in this case, it having the effect of reducing the judgment to the extent of such indebtedness.

The first prayer, which asked for a directed verdict for the defendant because of the want of legally sufficient evi-

dence entitling the plaintiff to recover, was, we think, properly refused, as the evidence, which we will not further set out herein with the result of prolonging this opinion, was sufficient to go to the jury, tending to establish the right of the plaintiffs to recover; nor do we find any reversible error upon the court's single ruling on the evidence. Therefore, as we find no error in the court's ruling in this case, the judgment will be affirmed.

*Judgment affirmed, with costs.*